BIRCHCREST BUILDING COMPANY v. PLASKOVE.

1. CONTRACTS—CONSTRUCTION OF WRITTEN CONTRACT.

   The Supreme Court construes a written contract according to the intentions therein expressed, when the intentions are clear on the face of the instrument and will make no attempt to ascertain the actual mental processes of the parties in construing the contract.

2. SAME—CONSTRUCTION—RELEASE.

   Contract between plaintiff and defendants relative to tract of land to be developed as a subdivision in which it was recited the agreement was to supersede and rescind all former agreements between the parties and provided that "each of the parties hereto do hereby release and discharge each other from any and all claims, demands, causes of actions and obligations under all contracts whatsoever which either party had, now has, or which either may have against each other arising out of their transactions with respect to the aforementioned property" was properly construed as effecting a present unconditional release, hence, plaintiff was not entitled to reformation of the instrument or an accounting thereunder.

Appeal from Macomb; Carroll (Howard R.), J. Submitted February 6, 1963. (Calendar No. 50, Docket No. 49,589.) Decided April 5, 1963.

Bill by Birchcrest Building Company, a Michigan corporation, against Manuel M. Plaskove, Minnie Plaskove, Max Marsten, and others for accounting and to reform an agreement. Interim decree, absolving defendant Marsten and others from liability

REFERENCES FOR POINTS IN HEADNOTES

[1] 12 Am Jur, Contracts § 227.
[2] 12 Am Jur, Contracts § 405.
   45 Am Jur, Release §§ 26–31.

and permitting consummation of sale of real property by defendants Plaskove to defendant Marsten and others, with payments to be made to clerk of court pending outcome of case. Bill dismissed. Plaintiff appeals. Affirmed.

*David S. Snyder* and *Kenneth F. Kahn* (*John T. Lungerhausen,* of counsel), for plaintiff.

*Edward Grebs,* for defendants Plaskove.

KELLY, J. Plaintiff instituted suit in Macomb county circuit court praying for an accounting and reformation of an agreement (exhibit 4) executed April 14, 1960.

The following facts are pertinent to determination of this case: One Andrew A. Cisaruk was the vendee on a land contract involving approximately 26 acres of land in Shelby township, Macomb county. On November 30, 1957, Cisaruk, as seller, entered into an agreement (exhibit 1) with defendant Manuel M. Plaskove and his associates, Schmidt and Kaczmarek, as purchasers, whereby they acquired from Cisaruk a 2/3 vendees' interest in the 26 acres, at a price of $34,000, on which Plaskove made a $6,000 down payment. Thereafter Plaskove acquired the interests of Schmidt and Kaczmarek by assignment. Exhibit 1 provided that Cisaruk and Plaskove were to subdivide and plat the 26 acres, and Cisaruk, by this agreement, was to negotiate with the original seller and titleholder (Kaminski) for a release of lots. Plaintiff, Birchcrest Building Company, is mentioned in the third paragraph of exhibit 1 as being engaged in "construction of buildings" and "desirous of constructing" on the property being purchased.

Defendant Manuel M. Plaskove testified that Cisaruk informed him that he could not obtain re-

lease on any of the lots, and that he (Plaskove) then advanced to Kaminski (under paragraph 6 of exhibit 1) the balance of $10,800 due under the contract between Cisaruk and Kaminski, the then deedholder to the property. Kaminski, on January 13, 1958, executed a deed to Cisaruk covering the 26 acres. On January 14, 1958, Cisaruk executed his deed to the property to Plaskove.

Prior to this circular transfer of title of the 26 acres, Cisaruk and Plaskove executed simultaneously on January 2, 1958, 2 contracts, hereinafter called exhibits 2 and 3. Exhibit 2 provided that Birchcrest was to pay $13,500 for the repayment of the money paid by Plaskove to Kaminski. In this agreement Plaskove is indicated as vendor and purports to transfer the entire property to plaintiff. By exhibit 3 Plaskove promised to pay plaintiff a balance of $28,000 in return for a 2/3 interest in the subject property.

Subsequent to the original contract (exhibit 1), plaintiff and defendant proceeded to initiate development of the 26 acres, whereby plaintiff installed culverts and employed engineering services in the amount of $6,462, and defendant Plaskove expended $3,250 on roads. After the execution of exhibits 2 and 3, a stalemate arose and both parties were in default in carrying out the provisions thereof.

In the early months of 1960, Cisaruk and defendant Plaskove renewed negotiations which resulted in an agreement (hereinafter called exhibit 4) whereby Birchcrest was to buy (through its secretary and president, Mr. Milanytch and Mr. Petrina, respectively) defendant Plaskove's interest in the subject property for $24,500. Plaskove's attorney, Mr. Grebs, prepared the agreement and submitted it to Birchcrest's attorney, Mr. Snyder. The following provisions are necessary for an understanding of this agreement (exhibit 4):

"2. Birchcrest Building Co. in consideration of the execution of said deed and placing same in escrow, agrees to pay Manuel M. Plaskove the sum of $24,500, as follows: $2,000 upon the execution of this agreement, and the balance of $22,500 on or before 30 days from the date of this agreement.

"3. It is further agreed that said deed shall be placed in escrow with Burton Abstract and Title Company for delivery to Birchcrest Building Co. upon the payment of the sum of $22,500 within 30 days from the date of this agreement. * * *

"6. This agreement shall supersede and rescind all former written or oral contracts and land contracts entered into between the parties hereto.

"7. Each of the parties hereto do hereby release and discharge each other from any and all claims. demands, causes of actions and obligations under all contracts whatsoever which either party had, now has, or which either may have against each other arising out of their transactions with respect to the aforementioned property."

An amendment to the above agreement was added giving Birchcrest an additional 30 days to exercise the option to purchase defendant Plaskove's interest in the property. Birchcrest did not exercise the option provided under exhibit 4. Plaintiff still claimed an interest in the property and so notified Plaskove by letter dated July 22, 1960.

October 10, 1960, Plaskove negotiated with Max Marston, individually and as agent for others, for the sale of the 26 acres for the sum of $53,000.

On October 25, 1960, plaintiff instituted this suit praying for reformation of exhibit 4 and for an accounting. Plaintiff asked:

"That the agreement of April 14, 1960, (exhibit 4), be reformed and determined as a mere option to purchase with stipulated liquidated damages for nonperformance and that paragraphs 6 and 7 thereof be determined as conditions subsequent to the exercis-

ing of the option by Birchcrest and of no force and effect by reason of Birchcrest's failure to accept the benefits of said option."

Plaintiff contends that defendant Plaskove and his associates, Schmidt and Kaczmarek, entered into a joint venture with Birchcrest through exhibit 1; that Plaskove paid off the original land contract in which Kaminski was seller, and took title to the 26 acres through the deeds of Kaminski to Cisaruk and from Cisaruk to Plaskove, as trustee for himself and plaintiff as joint venturers; that the rights of plaintiff and defendant Plaskove in the property, and their mutual financial obligations, necessitated execution of exhibits 2 and 3; that paragraphs 6 and 7 of exhibit 4 providing that each party is released and discharged of the other and that all former agreements of the parties shall be rescinded and superseded, were to become operative only in the event that Birchcrest exercised its option, as contemplated by the parties. Plaintiff contends it demanded elimination of the forfeiture clause contained in the original draft of exhibit 4, prepared by defendant's attorney, and that said forfeiture clause was accordingly eliminated.

Defendant Plaskove contends that after he paid off the land contract for Cisaruk and after new contracts were made (exhibits 2 and 3) Cisaruk and Birchcrest refused to go ahead with their agreements and a stalemate of 2 years resulted; that he informed the plaintiff that he was going to let it buy his interest in the 26 acres provided it cancel all previous contracts, and, that if it did not complete the purchase of the property from him, Birchcrest would no longer have any interest in the 26 acres; that plaintiff's attorney explained the contents of exhibit 4 to the officers of Birchcrest and said exhibit was reviewed by the board of directors of Birchcrest,

adopted by the corporation, and executed. Defendant denies plaintiff has any interest in the premises and asserts exhibit 4 rescinded all prior agreements between the parties and mutually released both parties from all demands, claims, causes of action and obligations.

Defendants Marston, John Doe and Richard Roe, by interim decree of October 2, 1961, were eliminated as defendants herein, and the sale of the property for $53,000 was ratified by plaintiff. Birchcrest's claim now relates to the proceeds of the land contract for $53,000 between Plaskove and Marston.

The trial court dismissed Birchcrest's complaint, finding that under paragraphs 6 and 7 of exhibit 4, plaintiff released and discharged all its prior claims against defendant Plaskove.

The controlling question before us is whether paragraphs 6 and 7 of exhibit 4, executed April 14, 1960, terminated plaintiff's interest in the property upon plaintiff's failure to exercise an option to purchase Plaskove's interest in the 26 acres as provided therein.

A thorough review of the record and exhibits indicates that under exhibit 1 Cisaruk transferred a 2/3 vendee's interest in the property to Plaskove and his associates; by exhibit 2 plaintiff agreed to pay Plaskove $13,500 in repayment for Plaskove's advancing to Kaminski the balance due on the contract between Kaminski and Cisaruk and Plaskove agreed to transfer the property to the plaintiff; by exhibit 3 Plaskove agreed to pay plaintiff $28,000 upon release of lots within 2 years. Plaskove would thereby acquire a 2/3 interest in this property.

At this point in the transactions, defendant Plaskove became the deedholder to the 26 acres. Plaintiff argues that Plaskove held the deed, or title, to the property in trust for himself and plaintiff. The trial court found that since both parties were in

default by exhibits 2 and 3, and title to the property rested in defendant Plaskove, that plaintiff at this juncture merely had a right of redemption of its interest in the property. Plaintiff strenuously argues it was a joint legal holder as a joint venturer of the property, with Plaskove holding title for both plaintiff and defendant Plaskove.

It is not necessary for decision here to determine whether plaintiff held an equitable or legal interest in the property prior to execution of exhibit 4.

Plaintiff strongly urges it did not understand that paragraphs 6 and 7 of exhibit 4 would be effective unless the option was exercised, and to give effect to those provisions would be to result in a forfeiture upon Birchcrest.

This Court has repeatedly held that we will make no attempt to ascertain the actual mental processes of the parties in construing a particular contract. We have held that *the law presumes that the parties understand the import of the contract and had the intention manifested by its terms.* See *Michigan Chandelier Co.* v. *Morse,* 297 Mich 41. This Court construes a written contract according to the intentions therein *expressed,* when the intentions are clear on the face of the instrument. *Teeter* v. *Teeter,* 332 Mich 1; *Bonney* v. *Citizens' Mutual Automobile Insurance Co.,* 333 Mich 435.

Both plaintiff and defendant Plaskove are actively engaged in developing real estate and construction; both parties are well versed in business enterprises in which a familiarity and experience are acquired beyond the ordinary individual. The clear meaning of paragraphs 6 and 7 of exhibit 4 would not be ambiguous or misleading to even the ordinary layman in such affairs. To grant plaintiff a reformation of exhibit 4 is to permit slight meaning and import to be attached to the ordinary usage of the English

language, and, more important, to allow little significance to a written instrument. This we cannot do.

We, therefore, concur with the trial judge and quote the following from his opinion:

"The clear meaning and purpose of exhibit 4 was to set aside the former status, set aside the prior agreements, substitute a new agreement in their place and release each other then and there from any claims each party had against the other for moneys paid by either in the acquisition and development of the property. Paragraph 7 is very clear in expressing such intent in the words, 'Each of the parties hereto do release and discharge.' * * * The word 'do' is not conditional as used. It does not express futurity. A present release and discharge of all claims of one against the other is inconsistent with determination the parties intended such release only on condition the option was exercised. A finding that the 'release and discharge' of all 'claims, demands, causes of actions and obligations under all contracts' took place but that the former contractual status was to continue if the option was not exercised, appears to be inconsistent with the language of exhibit 4. The court must conclude the parties meant what they said."

The decree of the lower court is affirmed. Defendant Plaskove shall have costs.

Carr, C. J., and Dethmers, Black, Kavanagh, Souris, Otis M. Smith, and O'Hara, JJ., concurred.